UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC, as successor-in-interest to Morgan Stanley Mortgage Capital Inc. Plaintiff, v. DREAM HOUSE MORTGAGE CORP., Defendant. | CA 07 365 S C.A. No. |

## COMPLAINT

This action arises out of the breach by Defendant, Dream House Corp. ("Dream House"), of its obligations under a Seller Agreement, as amended, with Plaintiff, Morgan Stanley Mortgage Capital Holdings LLC, as successor-in-interest to Morgan Stanley Mortgage Capital Inc. ("MSMCH").

## PARTIES

1. Plaintiff, MSMCH, is a New York corporation with its principal place of business in New York, New York.

2. Defendant, Dream House, is a Rhode Island corporation with its principal place of business at 385 South Main Street, Providence, Rhode Island.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this case and controversy under 28 U.S.C. § 1332 in that the parties are of diverse citizenship and the amount in controversy exceeds $75,000.

4. Venue is proper in this District under 28 U.S.C. § 1391(a) in that a substantial part of the events giving rise to the claim in this case occurred here and Defendant Dream House is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

5. Dream House is in the business of mortgage banking, including originating loans for sale in the secondary market.

6. On October 19, 2006, the parties entered into a contract for the purchase by MSMCH of loans originated by Dream House (the "Seller Agreement"). A true and correct copy of the Seller Agreement is attached hereto as Exhibit A. The Seller Agreement provides in relevant part that:

   a. MSMCH will provide Dream House with a Seller's Guide (the "Guide"), which is incorporated by reference into the Seller Agreement and which sets forth the applicable representations and warranties. (the "Guide"). See Ex. A, at Art. I and Art. V.

   b. Each representation and warranty, as described in the Guide and incorporated into the Seller Agreement, extends to all respective successors in interest and assigns. Id. at Art. IV.

   c. As between MSMCH and Dream House, the discovering party will provide notice to the other party of any material or adverse breach of representations or warranties or of any material and adverse defects with respect to mortgage loans purchased by MSMCH from Dream House. Id. at §6.01.

d. Within thirty (30) days of discovering its own breach or receiving notice of its breach from MSMCH (whichever comes first), Dream House is obligated to cure the breach or repurchase the loan. Id.

e. Where the default relates to the mortgagor's failure to make the first monthly installment payment (a "First Payment Default" or "FPD") or where the mortgagor is 30 or more days late on two or more of the first six monthly payments ("Early Payment Default" or "EPD"), Dream House is obligated to immediately repurchase the loan within ten (10) days of written notice from MSMCH. Id.

f. The Seller Agreement sets forth the calculation of the repurchase price to be paid by Dream House which includes the outstanding principal balance of the loan, accrued interest, certain premiums, and other costs and expenses incurred by MSMCH. Id. at §6.02.

g. In addition to its obligation to repurchase the loans, Dream House is required to indemnify MSMCH against any losses, damages, legal fees and costs resulting from Dream House's breach of the Seller Agreement. Id. at §6.03.

7. On December 26, 2006, Dream House and MSMCH executed Addendum No. 1 to the Seller Agreement (the "Addendum"). A true and correct copy of the Addendum is attached hereto as Exhibit B.

8. The Addendum altered the specific contractual obligations referenced in paragraph 6 above and stated that where the mortgagor was 30 or more days delinquent in the payment of any one or more of the first three (3) monthly mortgage installment payments due and payable after the transaction date with respect to first lien mortgage

loans, or any two (2) or more of the first six (6) monthly mortgage installment payments due and payable after the transaction date with respect to second lien mortgage loans, then upon ten (10) days written notice by MSMCH, Dream House was required to repurchase the loan at a price computed in accordance with the Addendum.

9. On May 21, 2007, Dream House and MSMCH executed a Supplement to the Seller Agreement. (the "Supplement"). A true and correct copy of the Supplement is attached hereto as Exhibit C.

10. The Supplement altered the specific contractual obligations referenced above and stated that where the mortgagor was 30 or more days late in making any two (2) or more of the first three (3) monthly mortgage installment payments with respect to a first lien mortgage, or, with respect to a second lien mortgage, fails to make the first monthly mortgage installment payment, or is 30 or more days delinquent in making any two (2) or more of the first six (6) monthly mortgage installment payments, then upon ten (10) days written notice by MSMCH, Dream House shall immediately repurchase the respective loan(s) at a price computed in accordance with the Seller Agreement.

11. Pursuant to the Seller Agreement, the Addendum, and the Supplement (hereinafter collectively referred to as the "Seller Agreement"), Dream House sold MSMCH several mortgage loans.

12. Several of these mortgage loans have sustained payment defaults, or have otherwise entailed a breach of the representations and warranties set forth in the Seller Agreement and the Guide (such breaches of representations and warranties are identified by the issue code "other" in Exhibit D hereto). Such defaulted or breached

loans currently include the mortgage loans referenced in Exhibit D hereto (hereafter referred to as the "Defaulted Loans"), and may include additional loans in the future, as further defaults and/or breaches of the Guide's warranties and representations may be discovered by the parties to the Seller Agreement.

13. As detailed in Column 4 of Exhibit D for each of the Defaulted Loans, the mortgagor either failed to make its initial monthly payment (FPD), and/or failed to timely make multiple payments within the first 6 months (EPD), and/or materially breached representations or warranties set forth in the loan documentation supplied by Dream House, thus triggering Dream House's obligation under the Seller Agreement to cure the breaches and/or repurchase the loans set forth in Exhibit D and to indemnify MSMCH for any losses.

14. MSMCH gave Dream House timely notice of these respective defaults on the dates specified in Column 3 of Exhibit D. Pursuant to the clear and unambiguous terms of the Seller Agreement, MSMCH demanded that Dream House repurchase and/or cure each of the Defaulted Loans.

15. Dream House has breached and continues to breach the Seller Agreement and incorporated Guide in material respects. Despite having been given timely notice of the Defaulted Loans and having received MSMCH's demand for cure and/or repurchase, Dream House has neither cured, nor repurchased any of the Defaulted Loans as required under the Seller Agreement. In addition, Dream House has not indemnified MSMCH for the losses resulting from the Defaulted Loans, all to the detriment and damage of MSMCH.

**COUNT I**
**Breach of Contract**

16. MSMCH, repeats and realleges the allegations in Paragraphs 1 through 15 of the Complaint as though set forth in full herein.

17. Pursuant to the Seller Agreement and the incorporated Guide, Dream House is obligated to cure and/or repurchase each of the Defaulted Loans.

18. Dream House has refused to cure and/or repurchase the Defaulted Loans, in breach of the Seller Agreement.

19. MSMCH has been damaged by Dream House's continuing breach of the Seller Agreement in an amount to be determined at trial.

**COUNT II**
**Indemnification**

20. MSMCH, repeats and realleges the allegations in Paragraphs 1 through 19 of the Complaint as though set forth in full herein.

21. Section 6.03 of the Seller Agreement requires Dream House to indemnify MSMCH against any loss or expense, of any type, arising from each of the Defaulted Loans.

22. Dream House has breached the terms of the Seller Agreement, Supplement, and Addendum by failing to cure and/or repurchase the Defaulted Loans and by failing to indemnify MSMCH for its losses.

23. MSMCH has incurred losses and expenses in connection with the Defaulted Loans, including but not limited to costs relating to any foreclosure of the properties underlying the Defaulted Loans.

24. MSMCH remains exposed to further loss and expense in connection with the Defaulted Loans because of Dream House's refusal to meet its repurchase and indemnification obligations.

25. MSMCH has been damaged by Dream House's conduct and is entitled to indemnification in an amount to be determined at trial.

WHEREFORE, MSMCH demand judgment against Dream House for consequential damage, attorneys' fees pursuant to the Seller Agreement and pursuant to applicable law, costs, interest, and for such other and further relief as the Court deems just and proper.

Dated: October 3, 2007

Respectfully Submitted,

MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC

By its attorneys,

William M. Dolan III (#4524)
Brian J. Lamoureux (#6211)
**BROWN RUDNICK BERLACK ISRAELS LLP**
121 South Main Street
Providence, RI 02903
(401) 276-2600
(401) 276-2601 Fax

*Of Counsel:*

Elise Busny
BROWN RUDNICK BERLACK ISRAELS LLP
One Financial Center
Boston, Massachusetts 02111
(617) 856-8200
(617) 856-8201 Fax

# 1519267 v2 - BUSNYES - 027080/0001