Version Date 04/06/05

**MORGAN STANLEY**
**SELLER AGREEMENT**

This Seller Agreement (this "Agreement") is made this 19th day of October 2006 by and between Morgan Stanley Mortgage Capital Inc., a New York corporation (hereinafter referred as "Purchaser" or as "Morgan Stanley"), and Dream House Mortgage Corp, a RI Corporation (hereinafter referred to as "Seller"). This Agreement shall govern the sale and transfer of mortgage loans by Seller to Morgan Stanley and other incidence thereof, and each such mortgage loan shall be subject to the warranties, representations and agreements referred to herein. In consideration of the mutual promises, covenants and benefits hereinafter set forth the parties hereto agree as follows:

## ARTICLE I

## INCORPORATION OF SELLER'S GUIDE

Section 1.01 Purchaser will issue to Seller a Seller's Guide, together with Product Descriptions and Guidelines and Underwriting Guidelines (which together with all amendments, modifications or supplements to any of the foregoing, are hereinafter collectively referred to as the "Guide"). All provisions of the Guide are incorporated by reference into this Agreement and shall be binding upon the parties. Specific references in this Agreement to particular provisions of the Guide and not to other provisions do not mean that those provisions of the Guide not specifically cited herein are not applicable. All terms used herein shall have the same meaning as such terms have in the Guide unless the context clearly requires otherwise.

## ARTICLE II

## DEFINITIONS

Section 2.01 As used herein, the following terms shall have the following meanings:

"closing date" shall mean the date each mortgage loan sold hereunder is funded by Seller.

"mortgage loan" shall mean a promissory note secured by a first (and if indicated by the Seller, and/or a second) trust deed or mortgage on residential real property.

"mortgage file" shall mean the documents to be turned over to Purchaser on the sale of any mortgage loan as called for in the Guide.

"mortgaged property" shall mean the residential real property which is security for each mortgage loan hereunder.

"timely" shall mean prior to the next installment due date under the terms of a promissory note sold hereunder.

"<u>transaction date</u>" shall mean the date each mortgage loan is sold to Purchaser hereunder.

## ARTICLE III

## PURCHASE OF LOANS

Section 3.01 It is the intention of the parties hereto that Morgan Stanley purchase certain mortgage loans from Seller, which loans qualify under the requirements set forth by Purchaser in the Guide. Purchaser may review mortgage loans submitted hereunder by Seller. Notwithstanding any provision in this Agreement to the contrary, Purchaser retains the right to approve or reject any such loans in its sole and absolute discretion.

## ARTICLE IV

## MUTUAL REPRESENTATIONS AND WARRANTIES

Section 4.01 The parties hereto each agree to make, as of the date of this Agreement and as of the date of each transaction between the parties, to each other and their respective successors in interest and assigns, each and every representation and warranty set forth in Section 1001 of the Guide.

## ARTICLE V

## SELLER'S REPRESENTATIONS AND WARRANTIES

Section 5.01 The Seller agrees to make to Purchaser, as to each transaction and as of the date of each transaction between the parties, each and every representation and warranty set forth in Section 1002 of the Guide.

## ARTICLE VI

## EFFECT OF BREACH OF REPRESENTATIONS OR WARRANTIES

Section 6.01 It is understood and agreed that the representations and warranties incorporated into Articles IV and V shall survive and continue in force for the full remaining life of each mortgage loan, and shall inure to the benefit of Purchaser notwithstanding the restrictive or qualified endorsement of the mortgage, any restrictive or qualified language contained in any assignment of mortgage or the examination or lack of examination of any mortgage loan file by Purchaser. Upon discovery by either Seller or Purchaser of a material and adverse breach of any of the representations and warranties or of a material and adverse defect with respect to a mortgage loan, the party discovering such breach or defect has a duty to give prompt written notice to the other party within thirty (30) days of discovery. Within thirty (30) days of the earlier of its discovery, or Seller's receipt of notice of any such breach of a representation or warranty or of such defect, Seller promptly shall cure such breach or defect in all material respects or repurchase the affected loan at a price as specified in Section 6.02. However,

notwithstanding anything contained herein to the contrary, in the event that a defect or default shall involve (i) the mortgagor's failure to make the first monthly mortgage installment payment following the transaction date when due and payable, or (ii) the mortgagor being thirty (30) or more days delinquent in the payment of any two or more of the first 6 monthly mortgage installment payments due and payable after the transaction date, then upon ten (10) days written notice by Purchaser, Seller shall immediately repurchase such mortgage at a price computed as provided below.

Section 6.02 In addition to all other amounts set forth herein the repurchase price shall be at a price equal to (a) the outstanding principal balance of the loan, plus (b) accrued interest at the mortgage rate from the date to which interest was last paid to the repurchase date, plus (c) the servicing premium, plus (d) any premiums (less any discounts) paid to Seller by Purchaser, plus (e) any other costs and expenses incurred by Purchaser or losses suffered by Purchaser (including, without limitation, any outstanding advances owed to any servicer).

Section 6.03 In addition to such repurchase obligation, Seller shall indemnify Purchaser and any present or future servicer of the applicable loans and the officers, directors, employees and affiliates of the Purchaser and such servicer, and hold them harmless against any and all losses, damages, penalties, forfeitures, reasonable legal fees and related costs, judgments, and other costs and expenses resulting from any claim, demand, defense, defect or assertion based on, grounded upon, or resulting from a breach of Seller's representations and warranties referred to in this Agreement.

Section 6.04 The parties hereto each understand and contemplate that Purchaser may resell said loans in the secondary market and it is understood that the right to demand repurchase for a material and adverse breach of any of the representations and warranties or of a material defect with respect to a mortgage loan shall further apply to any such purchaser of the loans. Based upon the forgoing, if any loan hereunder is rejected, returned, or a demand is made that it be repurchased from a secondary market investor, Seller shall, upon notice from Purchaser, repurchase the mortgage loan in accordance with the provisions of Article VI.

## ARTICLE VII

## [RESERVED]

## ARTICLE VIII

## COMMITMENTS; TRADING LIMITS

Section 8.01 All transactions between the parties hereto shall be governed by the terms and conditions of this Agreement and the Guide. No mortgage loan shall be sold to Purchaser unless all requirements of the Guide have been met (or have been waived in writing by the Purchaser) and Purchaser shall not be obligated to purchase any such loans unless Purchaser has provided a written commitment as set forth in the Guide to complete the sale as is set forth in the Guide.

Section 8.02 The Seller shall comply at all times with the best efforts and mandatory commitment trading limits established for the Seller pursuant to the terms of the Guide, and all provisions in the Guide related thereto.

## ARTICLE IX

## DOCUMENT DELIVERY

Section 9.01 Seller agrees to complete all acts necessary to perfect title to the mortgage in Purchaser and shall sell, assign and deliver to Purchaser, with respect to each such mortgage loan purchased by Purchaser pursuant to this Agreement, any and all of the documents required or necessary to effectuate the transaction. This shall include but not be limited to obtaining any documents required by or from an original mortgagor to insure that the mortgage loan complies with the Guide. Purchaser and Seller each agree to execute and deliver to the other such additional documents, instruments or agreements as may be required, necessary or appropriate to effectuate the purpose of this Agreement and any transaction hereunder.

## ARTICLE X

## TERMINATION

Section 10.01 This Agreement may be terminated by either party upon thirty (30) days' prior written notice to the other party, which notice shall be effective five (5) days after being placed in a U.S. Mail repository, postage prepaid. However, if Purchaser in its sole discretion believes that there has been a breach of any representation or warranties herein with reference to any mortgage loan sold hereunder or of any other obligations of Seller herein, then Purchaser may terminate this Agreement forthwith upon oral notification to Seller by Purchaser, which oral notification is followed by written notice as called for herein. However, termination of this Agreement shall not void Purchaser's obligation to purchase loans for which Purchaser has delivered a written commitment for as set forth in the Guide, other than those loans affected by such a breach. However, if the breach is of any of the representations or warranties set forth in Section 1001 of the Guide or in paragraphs (a), (b), (z) and (jj) of Section 1002(I) of the Guide, then any such written commitments shall be terminated. Termination of this Agreement shall not terminate any repurchase or indemnification obligation of Seller to Purchaser under this Agreement, which obligations shall survive the termination of this Agreement.

## ARTICLE XI

## GENERAL PROVISIONS

Section 11.01 [Reserved]

Section 11.02 This Agreement and the Guide set forth the terms and conditions under which Morgan Stanley agrees to provide Seller with the use of one or more systems for the purpose of electronically transmitting instructions to it, including certain electronic services that may enable Seller to engage in electronic transactions, and any software related thereto

(collectively, the "Electronic Services") either directly or through third parties. Seller is responsible for all transmissions, instructions, information, processes, click stream data or other communications (including those which may give rise to or relate to a Commitment) ("Communications") attributable to Seller's Passwords (as such term is defined in the Guide), whether entered by Seller's authorized personnel or by any other person, and any agreement or consent communicated from such access shall be deemed to be a duly signed writing of Seller sufficient to bind Seller.

Section 11.03 If any mortgage loan sold to Purchaser hereunder is prepaid by more than fifty percent (50%) of its original principal balance within 180 days following the purchase by Purchaser thereof, the Purchaser has the right to require the Seller to reimburse Purchaser for any premium (if any), inducements and servicing released premium (including any amount paid by Purchaser for the mortgage loan) within ten (10) business days after receipt of written notice. Seller's reimbursement of any premium, inducement or servicing released premium shall be reduced by the amount of any valid and enforceable prepayment penalty scheduled to be collected by Purchaser during the servicing of the loan.

Section 11.04 It is understood that this Agreement creates an ongoing relationship between the parties. As a result, there may be various fees, charges, and expenses assessed on each sale by Purchaser to Seller. If any such amount due Purchaser from Seller remains outstanding more than thirty (30) days after it is due, Seller then hereby authorizes Purchaser to deduct from any subsequent sales proceeds hereunder such amounts due Purchaser.

Section 11.05 By executing this Agreement, Seller is hereby granting to Purchaser (to be effective upon notice of Seller's breach of any of the terms or conditions of this Agreement) a special power of attorney irrevocably making, constituting and appointing Purchaser as Seller's attorney-in-fact, with power and authority to act in Seller's name and on Seller's behalf to execute, acknowledge and swear to the execution, acknowledgment and filing of all instruments and documents governing the funding, transfer or assignment of any mortgage loans purchased by Purchaser hereunder, which shall include, but is not limited to, assignments of the notes, security instruments and any other loan documents or rights thereunder transferred to Purchaser hereunder. This power of attorney being granted by Seller is a special power of attorney coupled with an interest and is irrevocable. It shall survive the dissolution of Seller and is limited to those matters herein set forth.

Section 11.06 All notices, requests, demands or other communications that are to be given under this contract shall be in writing, addressed to the appropriate parties and sent via e-mail, telecopier or U.S. mail, postage prepaid to the address below:

If to Purchaser:

Morgan Stanley Mortgage Capital Inc.
5002 T-Rex Avenue, Suite 300
Boca Raton, Florida 33431
Fax number: (212) 507-6097
e-mail address: conduitcca@morganstanley.com
Attention: Correspondent Contract Administration

If to Seller, as set forth on the signature page of this Agreement:

Any such notice, request demand or other communication hereunder shall be deemed to have been received on the date delivered to or received at the premises of the addressee.

Section 11.07 This Agreement supersedes any prior agreement or understanding between the parties concerning the subject matter hereof and cannot be modified in any respect except by an amendment in writing signed by both parties, provided however, that this Agreement shall not supersede the right of Purchaser to modify the Guide and have such modifications be binding on Seller.

Section 11.08 Purchaser and Seller agree that Purchaser may modify the Guide, and that Seller shall thereafter be bound by the terms of any such modification, as long as Purchaser sends any such modifications to Seller by mail or e-mail, and such modifications shall be effective upon the earlier of receipt by Seller or ten (10) days after such modification is mailed or e-mailed to Seller.

Section 11.09 This Agreement shall be construed in accordance with the laws of the State of New York.

Section 11.10 Seller agrees to provide Purchaser its most recent fiscal year financial statement audited by a Certified Public Accountant, on a yearly basis, and shall, from time to time at Purchaser's request, provide additional documentation regarding Seller's organization and personnel adequate to maintain the Seller's approved standing with Purchaser. Failure by Seller to provide requested documentation may result in Purchaser's refusal to issue new loan commitments. Such refusal will take the form of written notification and shall be effective ten (10) days after such notification is mailed to Seller, postage prepaid. Continued failure by the Seller to provide requested documentation shall be a default of the Agreement by Seller and shall be grounds for termination of the Agreement.

Section 11.11 Seller shall not solicit or encourage the refinancing of any property that is encumbered by a mortgage loan and sold hereunder after the mortgage loan has been purchased by Purchaser, and Seller will maintain this same requirement for any third-party originators from which Seller may purchase or fund mortgage loans. Solicitations to refinance through general mailings or through advertising or marketing campaigns which are general in nature shall not be considered a breach of this warrant. Seller agrees not to disclose any such names or information to third parties to encourage or aid them to refinance such properties after the mortgage loan is purchased by the Purchaser. This restriction shall not apply to any mortgage loan which has been deemed accelerated by Purchaser or its assignee.

Section 11.12 Seller acknowledges that nothing herein, or in the Guide, shall be construed to create an agency relationship, partnership, joint venture or employment relationship between Purchaser and Seller. Seller shall not hold itself out as such, or make any such or similar representations.

Section 11.13 In the event of any conflict or inconsistency between the provisions of this Agreement and the provisions of the Guide, the provisions of this Agreement

shall control. Any part or provision of this Agreement which is prohibited or unenforceable or is held to be void or unenforceable in any jurisdiction shall be ineffective, as to such jurisdiction, to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction as to any mortgage loan shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent permitted by applicable law, the parties hereto waive any provision of law which prohibits or renders void or unenforceable any provision hereof.

Section 11.14 This Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

Section 11.15 This Agreement shall bind and inure to the benefit of and be enforceable by the Seller and the Purchaser and the respective permitted successors and assigns of the Seller and the successors and assigns of the Purchaser. This Agreement shall not be assigned, pledged or hypothecated by the Seller to a third party without the prior written consent of the Purchaser, which consent may be withheld by the Purchaser in its sole discretion. In the event the Purchaser assigns this Agreement, and the assignee assumes any of the Purchaser's obligations hereunder, the Seller acknowledges and agrees to look solely to such assignee, and not to the Purchaser, for performance of the obligations so assumed and the Purchaser shall be relieved from any liability to the Seller with respect thereto.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties have caused their duly authorized officers to sign this Agreement as of the date set forth on the first page of this Agreement.

PURCHASER: MORGAN STANLEY MORTGAGE CAPITAL INC.

By: Christine Egan
Its: Vice president

SELLER:
Dream House Mortgage Corp
By:
Its: PRESIDENT

Seller's address for notices:

Dream House Mortgage Corp
385 South Main St
Providence, RI 02903
Fax number: (800) 818-0206
e-mail address: Ken@dhmc.com
Attention:
Kenneth Ferranti, President